UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                          Case No. 20-CR-196-4

ROBERT HAMILTON,

    Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

Robert Hamilton ("the Defendant") submitted a fraudulent Paycheck Protection Program ("PPP") application seeking $155,000 to Financial Institution 1 for his business Glory Transportation Services, LLC ("Glory Transportation"). For his conduct, the Defendant faces a guideline sentencing range of 21-27 months' incarceration as recommended by the Plea Agreement (Dkt. 38) and the Presentence Investigation Report (Dkt. 117) and a statutory maximum sentence of 30 years' incarceration. In light of the factors in 18 U.S.C. § 3553 and for the reasons set for below, the United States respectfully requests that this Court impose a term of imprisonment at the bottom of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range, two years of supervised release, and order the Defendant to pay $155,000 in restitution.

I.     **OVERVIEW OF *UNITED STATES V. THOMAS SMITH, ET AL.***

The Defendant was one of the defendants charged by Indictment in *United States v. Thomas Smith*, et al., which involved charges of bank fraud conspiracy and money laundering against him and four other individuals. All of the charged conduct took

place in the spring and summer of 2020. As described more fully in the Indictment and plea agreements associated with each of the defendants, the defendants obtained fraudulent PPP loans from a bank using false and fraudulent application materials. *See* Dkt. Nos 1, 5, 38, 42, 53, 73. In addition to the five defendants charged in the Indictment, three other defendants were charged by Information for their part of the scheme. *See United States v. Tarone Woods*, 20 CR 197; *United States v. Deon Petty*, 20 CR 199; *United States v. Marvin Fitzgerald*, 20 CR 202. In total, the scheme sought over $1 million in government funds for employees (and sometimes businesses) that did not exist. *Id.* Proceeds of the fraud were shared among co-defendants. *Id.* Some of the defendants also coordinated the false statements they planned to provide law enforcement, if approached, to try to conceal their crimes.

## II. OVERVIEW OF *UNITED STATES V. ROBERT HAMILTON*

A more detailed recitation of the facts relating to the scheme are detailed in the Defendant's plea agreement (Dkt No. 38), the plea agreements of the related defendants in the case, the PSR, and the government's submission regarding restitution. (Dkt. No. 87.)

Stephen Smith approached the Defendant in April 2020 and asked him whether he had received a PPP loan for Glory Transportation. When the Defendant said he had not, Stephen Smith told him to contact Thomas Smith, who could help him with the paperwork to get the loan. While Glory Transportation was a functioning company, it did not have any employees or payroll as of February 2020, and thus was not eligible for a PPP loan.

2

The Defendant went to Thomas Smith's office to discuss getting the loan. Thomas Smith told the Defendant that he would complete the loan paperwork and provide it to the Defendant to sign and drop off at Financial Institution 1. The Defendant signed the application and dropped it off at Financial Institution 1 as directed. He also agreed to provide Thomas Smith with $30,000 of the loan proceeds after the loan was funded.

After the loan was funded, the Defendant obtained a cashier's check for $30,000 payable to Thomas Smith. When he met Thomas Smith to deliver the check, Thomas Smith told the Defendant that if anyone asked about why the Defendant had paid him money, the Defendant should say it was for equipment or vans. Thomas Smith also said that the Defendant should pay Stephen Smith $10,000 of the loan money because it was Stephen Smith's idea. The Defendant declined to do so.

### III. PROCEDURAL BACKGROUND

A more detailed recitation of the procedural history of this case can be found in the Government's Position on Restitution. (Dkt. 87.) To summarize, on October 20, 2020, a grand jury returned an indictment charging the Defendant, Thomas Smith, Stephen Smith, Samuel Davis, and Jonathan Henley for participating in a bank fraud scheme between April 2020 and July 2020, in violation of Title 18, United States Code, Section 1344, and for engaging in money laundering, in violation of Title 18, United States Code, Section 1957. (Dkt. 1.)

The Defendant pled guilty to Count Three of the Indictment (Bank Fraud, in violation of Title 18, United States Code, Section 1344) pursuant to a written plea agreement on January 6, 2021. (Dkt. 25.) Sentencing is scheduled for June 21, 2021.

## IV.   SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Office's calculation of the Guidelines in this case. The Final Presentence Investigation Report, filed on June 15, 2021, determined that the total offense level was 16 and that the Defendant's criminal history category was I, which corresponds to an advisory Guidelines range of 21 to 27 months' imprisonment. (PSR ¶ 96.) The Probation Officer found that the Defendant was subject to a Base Offense Level of seven under U.S.S.G. § 2B1.1(a)(1). (*Id.* at ¶ 41.) The Defendant then received a 10-level enhancement for a loss exceeding $150,000 but less than $250,000 under U.S.S.G. § 2B1.1(b)(1)(F). (*Id.* at ¶ 42.) The Defendant received a two-level enhancement because the offense involved sophisticated means under U.S.S.G. §2B1.1(b)(10)(C). (*Id.* ¶ 43.)

The parties and the Probation Office agree that the Defendant is entitled to a two-level reduction for acceptance of responsibility. The Defendant has assisted authorities in the investigation and prosecution of his own misconduct by pleading guilty prior to indictment, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. Therefore, the United States moves the Court, under Section 3E1.1(b), to grant the Defendant an additional one-level reduction in the offense level for acceptance of

4

responsibility if the Defendant receives the two-level reduction for acceptance of responsibility.

With a Total Offense Level as Level 16, and a Criminal History Category of I, the Sentencing Guidelines recommend a sentence between 21- and 27-months' imprisonment. The United States agrees with the PSR's Guidelines' Calculations and has no corrections to the PSR.

V.      CONSIDERATION OF FACTORS UNDER SECTION 3553(A)

A.      Nature and Circumstances of the Offense

The Defendant's offense is a serious one meriting punishment. In 2020, as the COVID-19 pandemic spread across the country causing death and economic distress, the government created PPP loans to help small businesses whose livelihoods were jeopardized. The Defendant, who was the owner of a business that was not eligible for a PPP loan, took advantage of the program by submitting a false application claiming to have employees and payroll that did not exist. His application was supported by false tax forms. Furthermore, upon being discovered, the Defendant chose to continue with the scheme by trying to conceal his conduct. He told multiple lies to law enforcement about the state of Glory Transportation and his payment to Thomas Smith.

Still, there are some mitigating factors which weigh against imposing the most serious available sentence. The Defendant had a far more minor role in the scheme as compared to the ringleaders, Thomas and Stephen Smith. He did not fill out the loan application or create the fake tax forms. Furthermore, unlike his co-schemers, the

5

Defendant never made false statements to the bank after submitting the fraudulent application.

Finally, unlike many of his co-schemers, the Defendant actually had an operational business at the time he applied for the loan. Though Glory Transportation did not have employees for which it paid taxes, the company was in existence and did create revenue. It should be considered that the Defendant did in fact have a business when evaluating the circumstances of the offense.

**B. History and Characteristics of the Defendant**

The Defendant is a 59-year-old man who is in good health. (PSR ¶¶ 59, 70.) He grew up in a stable family and has close relationships with an extended family. (*Id.* ¶¶ 59-66.) The Defendant has been married to his wife since 2010, and he has two adult children from a previous marriage. (*Id.* ¶¶ 65-66.) The Defendant received his Masters of Education in 2010, and has been employed as a high school special education teacher since 1987. (*Id.* ¶¶ 81, 85.) He also works part time as a forensic specialist and owns Glory Transportation. (*Id.* ¶ 83-84.) The Defendant has no criminal history. (*Id.* ¶ 64.)

A significant mitigating factor for the Defendant is his acceptance of responsibility, which saved the government considerable resources in preparing for trial. Furthermore, as is clear by the fact that the Defendant held three jobs at the time of the offense, the Defendant committed this offense due to a desire to provide for his family and support his business, which supports a sentence at the bottom of the Guidelines. *See e.g. United States v. Eggleston*, 347 F.Supp.3d 381, 384 (E.D. Wisc. 2018) (in bank fraud case, noting as a mitigating factor that embezzlement offense was

6

committed to support business rather than for personal enrichment). As noted above, Glory Transportation was an operational business at the time the Defendant applied for the fraudulent loan.

### C. Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct

The government believes a that a sentence at the bottom of the Guidelines is appropriate for both specific and general deterrence. The sentence in this case should send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government emergency relief programs. Indeed, as the pandemic continues to impact small businesses, the PPP loan program remains ongoing. Actors like the Defendant who seek to defraud these programs make it more difficult for administrators of government and other relief programs to get aid to individuals who qualify for and need it. The Defendant's sentence should serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

The Defendant's lack of a criminal record, and the fact that he was only involved with one loan that was for a legitimate business, indicates that specific deterrence is not a concern in this case.

### D. Need for the Sentence to Avoid Unwarranted Sentencing Disparities

There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and those in this case. Around the country, only a few defendants have been sentenced to date for PPP related frauds, but those courts have imposed meaningful jail sentences. *See, e.g.*, *United States v. David Hines*, 21-CR-20011, S.D.FL. (imposing 78-month sentence on an

individual who fraudulently applied for multiple PPP loans with a loss of $3.9 million and also assisted others in submitting fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-CR-193, E.D.AR (imposing 41-month sentence on an individual who fraudulently applied for two PPP loans with a loss of $1.9 million); *United States v. Tarik Jaafar*, 20-CR-185, E.D.V.A. (imposing 12-month sentence on an individual who fraudulently applied for 18 PPP loans with a loss of $1.4 million); *United States v. Zhang*, 20-CR-169, W.D.W.A. (imposing 60 day sentence on an individual who fraudulently applied for multiple COVID-19 relief program loans, including four PPP loans with a loss of over $900,000). The government notes that the Defendant sought only one loan for $155,000 in this case, which is significantly less than the cases cited.

The government submits that the Defendant was significantly less culpable than Thomas and Stephen Smith. The Defendant was recruited into the scheme by Thomas Smith. He did not fill out any of the applications or create false documents like the Thomas Smith or Stephen Smith. Finally, unlike Thomas and Stephen Smith, the Defendant was not involved in the creation or direction of the scheme.

In this case, the Court has already sentenced Thomas Smith, the ringleader, to 57 months imprisonment. The Court has also sentenced three other co-schemers in this case: Samuel Davis was sentenced to 6 months in prison for one count of bank fraud, Deon Petty was sentenced to a year and a day for conspiracy to commit wire fraud, and Marvin Fitzgerald was sentenced to a term of probation for lying to law enforcement.

8

## VI.   RESTITUTION & FORFEITURE

The government incorporates its Position on Restitution for Sentencing, filed on April 13, 2021 at Docket No. 87.  For the reasons explained in that submission, the Defendant should be ordered to pay $155,000 in restitution.[1]

The government is not seeking a separate forfeiture judgment against the Defendant.

*          *          *

For the reasons stated above, the United States respectfully requests that the Court impose a term of imprisonment at the bottom of the Guidelines, two years of supervised release, and order the Defendant to pay $155,000 in restitution.  The United States submits that this sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

Respectfully Submitted,

DANIEL KAHN
Acting Chief, Fraud Section
U.S. Department of Justice

*s/Laura Connelly*_____
LAURA CONNELLY
LESLIE S. GARTHWAITE
Trial Attorneys
Fraud Section
U.S. Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Phone:  202-307-1423
laura.connelly@usdoj.gov

---

[1] The PSR noted that on May 25, 2021, the defendant made a payment to the clerk to be applied towards restitution. (PSR ¶ 35.)  The government agrees that the defendant should receive credit for these, and any other amounts paid for restitution.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

> */s Leslie S. Garthwaite*_____
> LAURA CONNELLY
> LESLIE S. GARTHWAITE
> Trial Attorneys
> Fraud Section
> U.S. Department of Justice